**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

POULIKAEEVA FINE                                    §
                                                    §
vs.                                                 §         CASE NO. 2:07-CV-165
                                                    §
EVERGREEN AVIATION GROUND                           §
LOGISTICS ENTERPRISE, INC., ET AL.                  §

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.     Introduction**

Pending before the court is the defendant Charlatte of America, Inc.'s ("Charlatte")
motions to set aside default judgment (Dkt. No. 15) and for leave to file an answer (Dkt. No. 18).
In its motion, Charlatte moves pursuant to Federal Rule of Civil Procedure 60(b), asking the
court to set aside default judgment.  Furthermore, Charlatte requests the matter be placed on the
trial docket so that the outcome may be determined by a trial on the merits.  For the reasons
discussed below, the court finds that Charlatte is entitled to relief under 60(b)(1).

**II.    Factual and Procedural Background**

The plaintiff, Poulikaeeva Fine ("Fine"), filed his original complaint against the
defendants, Evergreen Aviation Ground Logistics Enterprise, Inc. ("Evergreen") and Charlatte
(collectively, "the defendants"), on April 27, 2007.  In his complaint, Fine seeks damages for
injuries sustained as the result of an accident which occurred on February 5, 2007.  On that day,
Find alleges that, as he was driving a luggage tug, the steering wheel locked up, resulting in his
hitting a concrete wall.  Charlatte is the alleged manufacturer and designer of the luggage tug in
question.  These events occurred on the tarmac of the Dallas-Fort Worth International Airport
("DFW").

On May 18, 2007, Fine served Charlatte's registered agent, Grant Grayson ("agent"), with a copy of the original complaint in this case.  Absent a responsive pleading or other defense of the suit from Charlatte, the clerk entered a default on August 28, 2007.  Fine subsequently filed his motion for default judgment on December 6, 2007; a hearing was held on January 23, 2008, to determine damages; and the court entered an order granting Fine's motion for default judgment, awarding damages in the amount of $1,750,000 plus pre- and post-judgment interest.

According to Charlatte, its agent in Virginia maintains a procedure in place by which he notifies Charlatte of all suits received by him on its behalf.  For various reasons, Charlatte alleges that its failure to respond to the pleading was due to excusable neglect.

## III.    Discussion

### A.    Legal Standard

Granting or denying a motion to set aside a default judgment under Federal Rule of Civil Procedure 60(b) rests within the sound discretion of the trial court.  *See Owens-Illinois, Inc. v. T & N Ltd.*, 191 F.R.D. 522 (E.D. Tex. 2000) (citing *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985)).  Rule 60(b) provides the Court with "a grand reservoir of equitable power to do justice in a particular case."  *See id*. (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981)).  The Court's discretion, however, is not unbounded; it must be exercised in light of the balance struck by the federal rules between the goal of finality and the "incessant command of the court's conscience that justice be done in light of all of the facts."  *See id*.  The Fifth Circuit has adopted a policy in favor of resolving cases on their merits and against the use of default judgments. *See Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 938 (5th Cir.1999); *Lindsey v. Prive Corp.*, 161 F.3d 886, 892-93 (5th Cir.1998).

Rule 60(b) is a "remedial provision intended to prevent injustice by allowing parties their day in court even though some technical error has occurred which would otherwise be grounds for default." *Greater Baton Rouge Golf Assoc. v. Recreation and Park Comm'n*, 507 F.2d 227, 228 (5th Cir.1975). Rule 60(b) provides five specified reasons for which relief may be granted and contains a sixth catch-all category for reasons not specifically listed.[1] Charlatte argues it should be granted relief from the default judgment because its failure to answer was due to mistake, inadvertence, surprise, or excusable neglect as provided for under Rule 60(b)(1).

Rule 60(b)(1) provides relief from a default judgment that results from mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) is understood to encompass situations in which the movant's failure to respond is attributable to his own negligence. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 394 (1993).[2] Because Congress provided no guideposts for determining what categories of neglect are excusable, the court, in *Pioneer*, emphasized an equitable inquiry "taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. Although the concept of excusable neglect is "somewhat elastic," it generally excludes gross carelessness, ignorance of the rules, or ignorance of the law. *See id*. at 392.

The Fifth Circuit has directed district courts to consider three factors in determining whether sufficient grounds exist for setting aside a default judgment under Rule 60(b)(1): (1) the extent of prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the

---

[1] Fed. R. Civ. P. 60(b) provides that on motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or is no longer equitable; and (6) any other reason justifying relief from the operation of the judgment.

[2] Although decided in a bankruptcy context, the Court's interpretation of "excusable neglect" is specifically discussed in terms of Rule 60(b) and rests upon the plain meaning of those words. It is clear the Court's ruling applies in non-bankruptcy contexts as well. *See Stutson v. United States*, 516 U.S. 193, 194-96 (1996).

culpability of the defendant's conduct.  *See One Parcel of Real Property*, 763 F.2d at 183.  These factors are not "talismanic" and the court may consider other factors including whether the motion was made within a reasonable time, whether the interests in deciding the case outweighs the interest in the finality of the judgment, whether the public interest is implicated, and the amount of money at stake.  *See Hibernia Nat'l Bank v. Administracion Central Sociedad*, 776 F.2d 1277, 1280 (5th Cir.1985); *Seven Elves*, 635 F.2d at 402-03.  With these factors in mind, the court turns to the facts of the instant case.

### B.   Application

#### 1.   Prejudice to the Plaintiff

If the plaintiff will suffer prejudice by reopening the action, the court may deny the movant's motion for relief.  *See Pioneer*, 507 U.S. at 395.  The prejudice must involve more than the mere possibility of prejudice from delay inherent in every case.  *See Hibernia Nat'l Bank*, 776 F.2d at 1280.

Fine asserts that he would suffer prejudice by the court's setting aside of the default judgment, generally, in the form of spoliation of evidence.  Fine argues first, regarding physical evidence, that the alleged defective product has most likely been repaired, replaced, damaged by the elements, and/or used by other operators.  Second, regarding testimonial evidence, Fine argues that the memory of potential witnesses may have been affected by the passage of time, and that any potential expert testimony would most certainly be under even more intense scrutiny under *Daubert*.

Fine has not meet his burden of showing more than a mere possibility of prejudice.  *See Hibernia*, 776 F.2d at 1280.  While his support for spoliation of the evidence might have merit, if supported with adequate proof, presently Fine provides no adequate support for his theory that

the luggage tug's evidentiary value may have in anyway been compromised.  Furthermore, there is no evidence that any potential witnesses have suffered "memory loss."  Both Charlatte and DFW conducted an initial investigation, and the DFW investigating officer recorded his findings and opinions in a detailed report.  *See* Exs. A-1 & A-2 to Def.'s Mot.

Finally, Fine makes an unsupported plea to the court, asserting that Charlatte's tactics will only serve to set a bad precedent.  Instead of hypothesized future obstacles, and absent evidence to the contrary, there is no indication that setting aside the default judgment in favor of a trial on the merits will prejudice the plaintiff.

### 2.        Meritorious Defense

To merit relief, Charlatte must demonstrate that it has a meritorious defense such that the outcome of the litigation could be different if it were allowed to proceed to trial on the merits. *See Azzopardi v. Ocean Drilling & Exp. Co.*, 742 F.2d 890, 895 (5th Cir.1984).  Equity will not set aside a default when the defendant cannot raise the possibility of successfully defending suit because, in that case, there is no injustice.  *See id.*  At this stage Charlatte need not prove that it will likely succeed on the merits; rather, it need only establish that the evidence submitted, if proven at trial, would constitute a defense.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993).  The requirement of a meritorious defense is intended only to ensure that the court's order vacating judgment will not be an exercise in futility.  *Owens-Ill., Inc.*, 191 F.R.D. at 526.

Charlatte has presented a number of potentially meritorious defenses to Fine's claim, including third-party claims and Fine's own contributory/comparative fault.  In support of its defenses, Charlatte cites to its own accident report prepared shortly after the accident, as well an Airfield Incident Report, prepared by a third party.  *See* Exs. A-2 & A-2 to Def.'s Mot.  A

cursory reading of the third-party report reveals that it appears that Fine fell asleep at the wheel of the luggage tug.  Without inquiring further into the merits of the case as a whole, from the uncontroverted evidence presented to the court, it appears that Charlatte has submitted evidence that, if proven at trial, would constitute a defense.

### 3.        Culpability of Charlatte's Conduct

When the Defendant's negligence was at least a partial cause of its failure to respond, it has the burden of convincing the court its negligence was excusable.  *See Rogers*, 167 F.3d at 939 (citing *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975)).  The court is justified in refusing to relieve the defendant from a default judgment resulting from its failure to establish "minimum internal procedural safeguards."  *See id*.  Excusable neglect under Rule 60(b)(1), however, may arise from mistakes of counsel.  *See U.S. v. One 1996 Chevrolet Pickup Truck*, 56 F.R.D. 459, 462 (E.D. Tex. 1972).

The essence of Fine's argument regarding this factor is an application of *Pioneer* to the facts of this case.  Fine's heavy reliance on *Pioneer*, however, is misguided, as the Court ultimately determined that the attorney's failure to timely file a proof of claim was in fact excusable.  *See Pioneer*, 507 U.S. at 397.  The gist of the Court's holding in *Pioneer* regarding imputation of neglect was simply that the lower court "erred in not attributing to respondents the fault of their counsel. . . ."  *Id*.  Indeed, Fine would have the court sidestep any consideration of the reasons for the neglect of Charlatte's agent and, instead, focus on legal directives from a number of cases that, arguably, do not even stand for the propositions for which they are cited when applied to the facts of this case.

It is uncontroverted that Charlatte's agent had an established procedure by which the agent was supposed to notify Charlatte of all suits.  The circumstances suggested in the motion

(personnel turnovers and the agent's wife's cancer treatments) indicate to the court that the agent's failure to forward the suit to Charlatte was unintentional.  There is no indication that Charlatte had actual knowledge of the suit nor that it failed to calculate a deadline correctly.[3] The purported history of the agent's established practice of forwarding complaints further supports the finding that any neglect on the part of Charlatte was excusable.  For these reasons, the court deems that the agent's error in failing to forward the complaint to Charlatte was not due to legal error, but to an inadvertent accident and/or mistake, most assuredly prompted by personnel turnover and family health issues.

### 4. Other Factors

#### a. Good Faith

There has been no suggestion nor any evidence presented suggesting Charlatte's failure to file an answer was in bad faith.  Additionally, there is no indication that Charlatte used the default judgment as a delay tactic.

#### b. Length of Delay

In deciding a motion to set aside a default, a court may consider whether the defendant acted expeditiously to correct its default.  *See Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir.1992).

In this case, Charlatte was diligent in pursuing its defenses immediately upon learning of the default judgment and underlying complaint; it hired counsel in Texas the same day and filed its present motion less than two months after entry of the default judgment.  *Id*.

#### c. Amount of Money Involved

In *Seven Elves*, the Fifth Circuit reversed the decision of the district court declining to set aside a default judgment in the amount of $250,000, finding "the amount of money involved is

---

[3] The agent is an attorney with a private law firm.

7

very great, itself militating in favor of a full trial on the merits." 635 F.2d at 403.  Other courts have likewise been influenced by the size of the judgment at issue.[4]

In the present case, the court is asked to set aside a judgment for $1,750,000.  In light of the unexplored factual issues raised by Charlatte in its motion and its potential meritorious defenses, such an amount weighs in favor of setting aside the default judgment.

### d.     Public Interest Factors

The courts do not treat the three factors identified in *One Parcel of Real Property* as exclusive; instead, they rely on other relevant factors including whether the public interest is implicated.  *See In the Matter of Dierschke*, 975 F.2d at 184.  The Court is mindful of the implications of upholding the default judgment in this case.  A judgment of this size imposed without a trial on the merits could potentially have a devastating impact on Charlatte and its 34 employees.  This consideration weigh in favor of setting aside the default judgment.

## IV.   Conclusion

The Court, having carefully weighed the facts of this case, finds that Fine will not be prejudiced by vacating the default judgment; that Charlatte has asserted several viable defenses to Fine's complaint; and that Charlatte's failure to timely file an answer was the result of isolated human error.  Furthermore, there is no evidence that Charlatte acted in bad faith; rather, upon hearing of its default, it immediately took steps necessary to cure the default.  For all the above reasons, the court grants Charlatte's motion to set aside the court's default judgment (Dkt. No. 15).  The court also grants Charlatte's motion for leave to file an answer (Dkt. No. 18).

---

[4] *See Enron Oil Corp.*, 10 F.3d at 97; *Hoover v. Valley West D.M*, 823 F.2d 227, 230 (8th Cir.1987); *Sony Corp. v. Elm State Elec.*, 800 F.2d 317, 320 (2d Cir.1986); *Granville Gold Trust-Switz. v. Commissione Del Fullimento*, 924 F.Supp. 397, 403 (E.D.N.Y.1996) aff'd, 111 F.3d 123 (2d Cir.1997); *Liberty National Bank and Trust Co. v. Yackovich*, 99 F.R.D. 518, 521 (W.D. Penn.1982).

SIGNED this 20th day of March, 2009.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE